COUCH *et al.* v. GENTRY *et al.*, Appellants.

Division One, December 22, 1892,

1. **Will:** TESTAMENTARY CAPACITY: DISPOSING MIND. An instruction in a suit to contest a will upon the ground of mental incapacity which defines a "sound and disposing mind" to be "a mind and memory capable of recalling all the testator's property, and its amount, condition and situation, and of estimating and dividing it out and of comprehending the scope and bearings of the provisions of the will, and also of discussing and feeling the relations, connections and obligations of family and blood, and of recalling all of the persons who come reasonably within the range of his bounty, and also all he had previously done for any and each of them, and also the number, conditions and circumstances of those who are the proper objects of his bounty; and also of weighing their deserts with respect to conduct, capacity and need, remembering all and forgetting none;" overstates the capacity required to make a will and has a tendency to lead the jurors to believe that it is their province to say whether the testator made what they conceive to be a proper disposition of his property, and render a verdict accordingly.

2. ———: ———. A testator who understood the business about which he was engaged when he prepared and executed his will, the persons who were the natural objects of his bounty and the manner in which he desired the dispositions to take effect, was capable of making a will.

3. ———: ———: EVIDENCE. In such action to contest the validity of a will upon the ground of mental incapacity, evidence of how the testator's children worked in the house and in the field should be excluded as irrelevant.

*Appeal from Ray Circuit Court.* — HON. JAS. M. SANDUSKY, Judge.

REVERSED AND REMANDED.

*J. L. Farris* and *T. N. Lavelock* for appellants.

(1) The validity of a will is tested by the condition of the testator's mind, or his freedom from force or coercion at the time of its execution, and remote fragmentary acts, expressions or circumstances not directly or indirectly tending to establish mental incapacity or undue influence when the will was made should be excluded. Schouler on Wills [2 Ed.] sec. 232; 1 Redfield on Wills [3 Ed.] ch. 10, sec. 38, subdivs. 16, 33; Beach on Wills, sec. 107; *Ketchum v. Stearns*, 8 Mo. App. 66; *Jones v. Roberts*, 37 Mo. App. 163; *Ketchum v. Stearns*, 76 Mo. 896; *Jackson v. Hardin*, 83 Mo. 175; *Frost v. Dingler*, 4 Am. St. Rep. 593. (2) Sanity is the normal condition of the human mind. A man twenty-one years of age is presumed to be capable of making a will, and he who seeks to invalidate it by alleging insanity should prove it. 1 Redfield on Wills [3 Ed.] ch. 111, sec. 5, subdiv. 13; *Taylor v. Wilburn*, 20 Mo. 306; *Jackson v. Hardin*, 83 Mo. 182; *Frear v. Williams*, 7 Baxter, 550; *Brooks v. Barrett*, 7 Pick, 94; *Kingbury v. Whitaker*, 1 Am. Pro. Rep. 245; *In re Will of E. M. Cole*, 49 Wis. 147; *In re Will of Coffman*, 12 Iowa, 491–4; *Cotton v. Elmer*, 6 Am. Rep. 703; *Grubbs v. McDonald*, 91 Pa. St. 236. (3) A man who knows his property and those coming reasonably within the range of his bounty, and that he is disposing of his estate by will, possesses the required testamentary capacity. *Rankin v. Rankin*, 61 Mo. 295; *Brinkman v. Rueggesick*, 71 Mo. 555; *Jackson v. Hardin*, 83 Mo. 175; *Myers v. Hauger*, 98 Mo. 439; *Thompson v. Ish*, 99 Mo. 180; *Norton v. Paxton*, 110 Mo. 456; *Waddington v. Buzby*, 14 Am. St. Rep. 706; *Brown v. Riggin*, 94 Ill. 560. (4) The error of giving an improper instruction on a material question involved in a case is not cured by giving another which correctly

declared the law, for it cannot be known by which the jury were governed in their finding. *State v. Clevenger,* 25 Mo. App. 653; *Bindbutal v. Railroad,* 43 Mo. App. 473; *Thomas v. Babb,* 45 Mo. 387; *Goetz v. Railroad,* 50 Mo. 474; *State v. Mitchell,* 64 Mo. 193; *State v. McNally,* 87 Mo. 658; *Frederick v. Allgaier,* 88 Mo. 603; *State v. Herrill,* 97 Mo. 110; *Haight v. Vallett,* 23 Am. St. Rep. 465. (5) The verdict of the jury was not supported by substantial evidence, and appellate courts will reverse judgments when the weight of the evidence is so strongly opposed to the verdict as to render it reasonably certain that the finding of the jury was the result of mistake, sympathy, bias, passion, prejudice or partiality. *Friez v. Fallen,* 24 Mo. App. 443; *Mauerman v. Railroad,* 41 Mo. App. 357; *Empy v. Cable Co.,* 45 Mo. App. 424; *Duggan v. Railroad,* 46 Mo. App. 267; *Adler v. Wagner,* 47 Mo. App. 26; *Whitsett v. Ranson,* 79 Mo. 260; *Jackson v. Hardin,* 83 Mo. 185; *Spohn v. Railroad,* 87 Mo. 86; *Garrett v. Greenwell,* 92 Mo. 125; *State v. Primm,* 98 Mo. 372; *Long v. Moon,* 107 Mo. 338.

*C. T. Garner & Son, J. W. Garner* and *McConlough, Peery & Witten* for respondents.

A person in order to make a valid will must be of sound and disposing mind and memory and free from undue influences. The mind must be capable of knowing and recollecting all of his property, its amount, condition and situation, and of estimating and dividing it out, and of comprehending the scope and bearing of the provisions of the will he is making, and of feeling the relations, connections and obligations of family and blood, and of remembering all of the persons who come reasonably within the range of his bounty, and what he may have previously done for any and each of

them, and the circumstances and conditions of those who are the objects of his bounty, and of weighing their deserts with respect to conduct, capacity and need, remembering all and forgetting none.   These are elements that must exist and enter into a sound and disposing mind and memory; they are all propositions of law that are correct.    *Den v. Johnson,* 2 South. 454; Redfield on Wills, sec. 5, 123-4; sec. 9,  126; sec. 47, 34; 97, note 3; *Daniel v. Daniel,* 39 Pa. St. 207; *The Parish Will Case,* 23 N. Y. 29; *Clark v. Fisher,* 1 Paige, 171; *McClinton v. Curde,* 32 Mo. 411; *St. Legn Will Case,* 34 Conn. 434.

BLACK, J.—This was a suit to contest the will of Benjamin B. Gentry on the grounds of mental incapacity and undue influence exerted by the wife and some of the children of the testator.  Verdict against the will.

The testator had three daughters by his first marriage, namely, Susan McBee, May Patton and Nancy Couch.   The plaintiffs are the children of Mrs. Couch. The other daughters by the first marriage are made the defendants, but in interest they stand on the side of the plaintiffs.    The father married the second time in 1860.    Two or three years after that the girls before mentioned married, and from that time on ceased to be members of their father's household. ·  He had eight children by the second marriage.   Those children and the widow are made defendants.

The testator left an estate valued at $30,000.   By the will in question he gave the plaintiffs $500, and to each of the  other two daughters  by the first marriage $250.    These daughters by the first  marriage had received no advancements worthy of mention.   To the widow and children of the second marriage he made the following devises and bequests:   To George, $350;

to Charles $450, and eighty acres of land; to each of two daughters, $1,400; to John, eighty acres; to his wife, two hundred and thirty-five acres for life. The remainder in this land and his other property he divided equally between the children of the second marriage.

The evidence shows that the deceased was a farmer, a man of good business capacity and that he acted upon his own judgment in business matters. He was quite sick for a short time in December, 1886, at which time he executed a will. From that time to the first of September, 1888, he was out and carried on his farm as usual. At the last named date he was again confined to his bed, and the will in question was executed on the third of September, 1888. He died at the age of sixty in December of the same year.

At the time he made this last will he was confined to his bed from an enlargement of the liver, and at times had much difficulty in breathing, during which he suffered much pain. The attending physicians say he had sinking spells from one to three times in twenty-four hours, lasting one or two hours. He had one in the morning of the day the will was executed. He was then informed that his case was critical, and he expressed a desire to make a change in his will. The family sent for an attorney who arrived in the evening. The testator then said he desired to add a codicil, but the attorney thought best to prepare an entire new will, and this was done. The deceased gave all the directions for preparing the will, but, in speaking of the tracts of land, mentioned them by the names of the persons from whom he made the purchases, and called upon a neighbor who was present to give the numbers. It seems he held two notes against one son, which he took into account in making the will. After it had been signed he called for these notes, stating where

they would be found and where they were found after considerable search, and the notes were then destroyed under the advice of the attorney. During the preparation of the will he made calculations in his head with the same rapidity and accuracy that others did with pencil. The evidence of the physician and subscribing witnesses is to the effect that he was perfectly rational during the entire time of preparing and signing the will. This second will was the same as the first, except as to the parcels of land devised to the sons, and this change was made from the fact that there had been a change of title of one piece before given to one son. From the date of the will to his death in the following December he gave daily directions to the boys as to what they should do, and during that time sold some hogs and other stock. In short he continued to direct the farm affairs.

On the other hand, the plaintiffs produced evidence to the general effect that he failed to recognize some persons who called to see him during his last illness, that he was at times a very sick man, and some of the witnesses give it as their opinion that he was not in a fit condition to transact business. The plaintiffs produced evidence to the effect that when he made the first will he was very sick and also flighty from a diseased leg and foot and from fever; and the defendants produced evidence tending to show that he was then in the full possession of his faculties.

The evidence of undue influence is in substance this: A number of witnesses say the testator expressed to them at different times a determination to divide his property equally among all his children. Some of these witnesses do not know whether he included the children by the first marriage or not. Others say he did in speaking to them include the first set of children. One witness says he worked for the deceased twelve

years, that the second wife and two of the girls by the first marriage got into a spat on one occasion, when the second wife said she would see that they got nothing from their father. This alleged incident occurred fifteen or eighteen years before the date of the will. Mrs. Patton says her stepmother often got out of humor with her and her sister, and on these occasions said they should only have $5, enough to keep them from breaking the will; "She told me that as many times as I have lived years." These disputes arose also fifteen years or more before the date of the will, as we understand the evidence. This witness says her father expressed to her an intention to buy for her a certain forty acres of land in June before his death, but the sale of the land did not take place until after he died. The defendant, the widow of the deceased, testified that her husband often spoke to her about making a will, that she said to him to be sure and leave her enough during her life; that she did not see the first will, and did not attempt to influence him in the disposition of his property.

There was much other evidence to the effect that the girls by the first marriage planted, hoed and gathered corn and performed other work in the field while at their father's home; and this was followed by evidence that all the children were required to work to the extent of their ability at all times.

The court gave an instruction at the request of plaintiffs which defines a "sound and disposing mind" to be "a mind and memory capable of recalling all of the testator's property and its amount, condition and situation, and of estimating and dividing it out, and of comprehending the scope and bearings of the provisions of the will, and also of discussing and feeling the relations, connections and obligations of family and blood, and of recalling all of the persons who come

reasonably within the range of his bounty, and also all he had previously done for any and each of them, and also the number, conditions and circumstances of those who are the proper objects of his bounty, and also of weighing their deserts, with respect to conduct, capacity and need, remembering all and forgetting none.''

If the testator understood the business about which he was engaged when he had prepared and executed the will, the persons who were the natural objects of his bounty and the manner in which he desired the dispositions to take effect, he was capable of making a will. Schouler on Wills, sec. 68. Such is in substance and effect the rule as stated by this court in a number of cases. *Brinkman v. Rueggesick*, 71 Mo. 553; *Benoist v. Murrin*, 58 Mo. 307; *Jackson v. Hardin*, 83 Mo. 175; *Myers v. Hauger*, 98 Mo. 433; *Thompson v. Ish*, 99 Mo. 160; *Norton v. Paxton*, 110 Mo. 456. We said in the case last mentioned that a person, though aged or infirm, who is able to transact his ordinary business affairs, and who has a mind and memory capable of presenting to him his property and those persons who come reasonably within the range of his bounty, has the capacity to make a will.

Now according to this instruction given the following elements are necessary to constitute testamentary capacity: A mind capable of recalling all of the testator's property and its amount, condition and situation; of estimating and dividing it out; of comprehending the scope and bearings of the provisions of the will; of recalling all the persons who come reasonably within the range of his bounty; and all he had previously done for any and each of them.

This instruction, as thus far stated, is open to criticism. It is not necessary that the testator should be able to recall *all* of his property, and the condition and situation thereof, or to recall *all* that he had done for

each of the persons coming within the reasonable range of his bounty. The two requirements thus coupled together overstate the capacity required to make a will. But few men having large estates come up to such a standard. Again, it is doubtless true that the testator should have a reasonable understanding as to how he desires his will to take effect, but to say he must understand the scope and bearing of the provisions of the will as prepared by his adviser, and this instruction is subject to such a construction, is another thing—a thing as to which legal advisers and eminent men are sometimes mistaken. This may be a technical criticism, but when the evidence to support the verdict is as weak as it is here we must see that the instructions are correct in all respects and free from objections.

But this instruction goes further. It says a disposing mind must be one capable of discussing and feeling the relations, connections and obligations of family and blood, and of recalling the number, condition and circumstances of those who are the *proper* objects of the testator's bounty, and also of weighing their deserts, with respect to conduct, capacity and need, remembering all and forgetting none.

Such statements as these may be proper in those jurisdictions where the judge may in the form of a charge to the jury discuss and sum up the evidence; but they have no proper place in our system of giving written instructions before argument. The vice of such statements in an instruction must be apparent, when we remember that there was evidence showing the condition in life of the plaintiffs, their wants and necessities, and the urged claims of the girls by the first marriage because of out-door work performed by them. Such statements as these given in an instruction must have a tendency to lead the jurors to believe that it is their province to say whether the testator made what

they conceive to be a proper disposition of his property and render a verdict accordingly.

Indeed this instruction is a copy of a portion of an instruction refused in *Benoist v. Murrin*, 58 Mo. 307, which refusal this court approved. Some portions of that instruction are omitted in this one, but we find nothing in that case which approves the instruction as modified in a case like the one in hand. There the will was assailed on the ground that the testator's mind was affected with monomania or delusion, and it was held that the court committed no error in confining the instructions to the special train in issue. One reason being assigned why the instruction was properly refused, it was not necessary to give to it any further consideration. The court erred in giving this instruction; and all the evidence as to how the children worked in the house and in the field should be excluded. It has nothing to do with any real issue in the case.

Counsel for the defendant insist that the evidence does not support the verdict. As this question was made for the first time in the motion for a new trial and the judgment must be reversed for the reasons given, we leave it undecided. As the case stands we think the judgment should be reversed and the cause remanded, and it is so ordered. All concur.