St. Louis, Keokuk & Northwestern Railroad Company v. St. Louis Union Stock Yards Company, *Appellant.*

Division Two, February 27, 1894.

1. **Railroad**: CONDEMNATION PROCEEDING: VALUE OF PROPERTY: EVIDENCE. Evidence whether defendant's tracts are in demand is competent on the question of value in a railroad condemnation proceeding.

2. ———: ———: OPINION OF WITNESS: EVIDENCE. Questions calling for an expression of opinion by the witness on matters as to which the jury are as competent to judge as the witness are properly excluded.

3. ———: ———: VALUE OF PROPERTY: EVIDENCE. A witness in a railroad condemnation proceeding can only give his opinion as to the market value of the property sought to be condemned, not its particular value to the owner.

4. ———: ———: ———: ———. A witness who states that he is acquainted with the property and able to express an opinion of its value may give an opinion of such value and as to the amount of damages in controversy.

5. ———: ———: OPINION OF WITNESS: EVIDENCE. A witness qualified by experience in business at other places may give his opinion as to methods and facilities in such a business as the owner is doing on the premises through which the right of way is taken, but he can not state facts in regard to his own business.

6. **Riparian Owner, Title of.** A riparian proprietor of a navigable stream only owns to the water's edge in this state.

7. ———. The riparian owner has, however, the right of access to the navigable part of the river in front of his premises and the right to make a landing, dock, wharf, or pier for his own use or the use of the

public, but such structure must not encroach upon navigable waters, and vessels and the commerce navigating the stream must not be impeded in their passage or precluded from the use of all parts of the stream which are navigable in fact.

8. Railroad: CONDEMNATION PROCEEDING: INSTRUCTION. An instruction is erroneous in a condemnation proceeding which assumes that the defendant's land derived some peculiar and special benefits by reason of the location of the road where that was one of the controverted questions before the jury.

9. ——: ——: ——. An instruction calling the jury's attention to certain elements of damages claimed and omitting others proper to be considered is erroneous.

10. ——: EASEMENT, RESERVATION OF TO OWNER. Where the railroad company condemning land for right of way, purposes reserving to the landowner a driveway or other easement not reserved by the statute itself, such reservation should be made in the petition.

11. ——: ——: DAMAGES. The fact that the company has permitted the landowner to use such way under its track can not mitigate the owner's damages in a condemnation proceeding, since it is entitled to the use of its whole right of way for railroad purposes and may revoke such permission at any time.

12. Practice: INSTRUCTIONS. An instruction should not comment on the evidence or single out particular facts and direct the attention of the jury to them.

*Appeal from St. Louis City Circuit Court.*—HON. DANIEL DILLON, Judge.

REVERSED AND REMANDED.

*Campbell & Ryan* for appellant.

(1) Just compensation must be paid to the owner; a fair equivalent—a just indemnity for the damage the owner may sustain by reason of such appropriation, in view of the uses to which the land may be put. *Railroad v. McGrew,* 104 Mo. 282; *Railroad v. Porter,* 112 Mo. 368; *Bridge Co. v. Schaubacher,* 57 Mo. 582; Lewis on Eminent Domain, sec. 479. The damages to be paid are for the injury to the whole

of the property as it is left in view of the uses to which the part taken is to be put. 104 Mo. 291. (2) The facilities for river and railway transportation of stock are property rights which belong to the owner of the land, and if injured by the appropriation of the land, constitute damage to the remaining land for which the owner should be compensated in damages. 104 Mo. 291–294. (3) The expense of making new chutes to receive the business of respondent which was formerly by the Wabash switch was an expense for readjustment which must be considered in awarding a just indemnity. 104 Mo. 294. (4) The only benefits to be considered, are the direct and peculiar benefits resulting to the land, and not the general benefits to it in common with others. *Railroad v. Waldo*, 70 Mo. 632; 104 Mo. 291. (5) The plaintiff's instructions assume as a fact that there were peculiar benefits resulting to the remainder of defendant's property by the taking of the strip in question, and hence were bad as assuming a controverted and material fact. *Stone v. Hunt*, 94 Mo. 475; *Comer v. Taylor*, 82 Mo. 341; *Wilkerson v. Thompson*, 82 Mo. 317; *Peck v. Ritchey*, 66 Mo. 114; *Railroad v. Griffin*, 68 Ill. 499; *Durham v. Goodwin*, 54 Ill. 469. (6) The instruction given for plaintiff was bad in this, that it singled out particular facts in evidence, and instructed the jury to consider them only in determining the extent of the damage to defendant's property not taken. *Barr v. City of Kansas*, 105 Mo. 550; *Spohn v. Railroad*, 87 Mo. 74; *Gilliam v. Ball*, 49 Mo. 249; *Rose v. Speis*, 44 Mo. 20; *Fine v. Schools*, 39 Mo. 59. This instruction was also misleading, as pointed out in our argument on the instructions. (7) The railroad, under these condemnation proceedings, has the exclusive right to the use and occupation, in connection with its business, of the right of way, both above and below the surface. And that the right of

the stock yards to the use of this passage way under the tracks was not even a mere license or privilege (which would have been revocable at the pleasure of the railroad), there not having been any contract or arrangement of any kind between the railroad and stock yards for its being built or maintained. *Pitzman v. Boyce*, 111 Mo. 387; *Railroad v. McGrew*, 104 Mo. 286; *Moss v. Railroad*, 85 Mo. 86; *Jones v. Railroad*, 84 Mo. 151; *Wheeler v. Railroad*, 12 Barb. 227; *Kyle v. Railroad*, 2 Barb. Ch. 490; *Railroad v. Holton*, 32 Vt. 43; *Hozen v. Railroad*, 2 Gray, 574; *Railroad v. Boyd*, 8 Phil. 224; *Gas Co. v. Gas Co.*, 131 Pa. St. 522; *Gas Co. v. Davis*, 23 Atl. Rep. 218; *Railroad v. Railroad*, 96 Ill. 274. (8) Plaintiff's instruction with reference to the commissioners' award was bad in that it injected into the case an issue not made by the evidence. *Paddock v. Somes*, 102 Mo. 226; *Brown v. Railroad*, 101 Mo. 484; *Merret v. Poulter*, 96 Mo. 237. (9) The concluding part of plaintiff's instruction commencing with the words "then the jury are instructed that it is of no importance," and down to the end of the paragraph, is clearly bad, being argumentative and a comment on the evidence. *Couch v. Gentry*, 113 Mo. 248; *Forrester v. Moore*, 77 Mo. 651; *Zimmerman v. Railroad*, 71 Mo. 476; *Jones v. Jones*, 57 Mo. 138; *Anderson v. Kincheloe*, 30 Mo. 520; *Fine v. Schools*, 30 Mo. 166; *Chouquette v. Barada*, 28 Mo. 491; *Thorp v. Galwey*, 85 Ill. 612; *Ludwig v. Sager*, 84 Ill. 99; *Chicago, etc. v. Griffin*, 68 Ill. 499; *Thompson v. Force*, 65 Ill. 370; *Chapman v. Cowrey*, 50 Ill. 512; *Morris v. Lachmann*, 68 Cal. 109; Thompson on Trials, sec. 2301. (10) The court further erred in refusing instructions.

*John G. Chandler* for respondent.

(1) There was no error committed by the trial court in ruling on the evidence. (2) The instructions

given at the instance of respondent fairly submitted the whole case to the jury, assuming nothing, but submitting to the determination of the jury every fact in dispute, and the effect thereof upon the question and measure of damages. Every part and parcel thereof is supported by the following authorities: *Railroad v. McGrew*, 104 Mo. 282; *Lawrence v. ·Boston*, 119 Mass. 129; Lewis on Eminent Domain, secs. 478, 481, 487, 488, 498; 2 Dillon on Mun. Corp., sec. 624; Wood's Railway Law, sec. 257; *Platt Co. v. Newby*, 25 Mo. 258; *Lingo v. Burford*, 112 Mo. 149; *Railroad v. Ridge*, 57 Mo. 599; *Bridge Co. v. Schaubacher*, 57 Mo. 582; *Railroad v. Allen*, 22 Kan. 285; *Railroad v. Kregeloe*, 5 Pac. Rep. (Kan.) 15; *Railroad v. Fletcher*, 21 N. E. Rep. (Ill.) 577; *Railroad v. Railroad*, 105 Ill. 388; *Hays v. Railroad*, 54 Ill. 373; *Co. v. Owsley*, 13 Pac. Rep. (Wash.) 186; *McGregor v. Gas Co.*, 21 Atl. Rep. (Pa.) 13; *Packard v. Railroad*, 25 Atl. Rep. (N. J.) 506; *Chicago v. Taylor*, 125 U. S. 161. (3) The instruction given for respondent, if it had any fault, was too favorable to appellant. It in effect told the jury to allow appellant each and every item of cost of removal and rearranging its yard. *Bridge Co. v. Schaubacher*, 57 Mo. 582; *Railroad v. McGrew*, 104 Mo. 282; Lewis on Eminent Domain, sec. 498. (4) That portion of respondent's instruction which declares that for the purposes of this case appellant has a passage way by the reconstructed driveway or stock chute, was correct, and likewise the addition to the same purport made to appellant's instruction number 16. *Railroad v. Allen*, 22 Kan. 285; *Railroad v. Kregeloe*, 5 Pac. Rep. (Kan.) 15; *Railroad v. Fletcher*, 21 N. E. Rep. (Ill.) 577; *Railroad v. Railroad*, 105 Ill. 388; *Co. v. Owsley*, 13 Pac. Rep. (Wash.) 186; *McGregor v. Gas Co.*, 21 Atl. Rep. (Pa.) 131; *Packard v. Railroad*, 25 Atl. Rep. (N. J.) 506; *Chicago v. Taylor*, 125 U. S. 161; Lewis on Eminent Domain,

sec. 481. (6) There was no evidence to warrant appellant's instructions (refused) numbers 2, 3, 5, 6 and 9. Instruction number 1 was contrary to law, as was also number 4. There was no evidence of future prospective uses to warrant the second clause of instruction number 14. All that was material in this clause was embraced in other instructions. *Chicago v. Taylor*, 125 U. S. 161; *Boom Co. v. Patterson*, 98 U. S. 403.

BURGESS, J.—This proceeding was instituted by plaintiff to condemn for its right of way a strip of land fifty feet in width by five hundred and fifty-five feet in length, lying parallel with and eleven feet east of the west wharf line, as established by ordinance 5403, of the city of St. Louis; said strip being a part of a tract of land owned by defendant, containing about twenty-seven acres. Twenty-two acres of this property is bounded on the north by Bremen avenue; on the east by the Mississippi river; on the south by the property of Knapp, Stout & Co., and on the west by Hall street. Five acres owned by defendant and used in connection with the twenty-two acres, lie west of Hall street fronting on Bremen avenue and extending south five hundred and fifty feet, making twenty-seven acres in all owned and used for stock yard purposes. The two tracts are separated by Hall street. The twenty-two acre tract is low bottom land, about eight or nine feet below the grade of Bremen avenue and Hall street. Near the west wharf line, it is protected by a levee of the same elevation as Bremen avenue, and extending therefrom so as to connect with a levee of corresponding elevation of Knapp, Stout & Co. East of the levee the land slopes to the river. West of the levee and covering most of the ground to Hall street, there were stock sheds and pens, a hotel, offices and other structures suitable to a business of that

sort; from the top of the levee eastward towards the river, there was erected on piles a roofed structure. called a runway, driveway or cattle chute, through which stock was driven to and from the yard in shipping and receiving from the river. On Bremen avenue near the river and east of the right of way was a slaughter house and grain elevator. On the south or line of Knapp, Stout & Co., also on piles, was a long wooden building, a salt warehouse, reaching to ordinary low water on the east and extending on the west beyond the east line of the right of way, sixty-five feet on the north side and forty-five feet on the south. Within the right of way was a rendering house. The land was well improved for the purposes for which it was used, there having been erected thereon all necessary structures and conveniences in modern use for such a business enterprise.

The property had a private switch connecting with the Wabash Road running along its south side from Hall street, which furnished facilities for loading and unloading cattle, and for connecting with all other roads coming into the city of St. Louis and with the two transfer railways, which connected with roads on the east side of the Mississippi river. This switch was used for the purposes of transporting cattle to and from the stock yards, and for the purpose of carrying grain to and from the grain elevator on the property. The defendant constructed its building with unloading chutes to receive cattle from cars on this switch, and the chutes were capable of taking twenty-three cars at one time. This same switch could have been turned so as to accommodate the eastern part of the property with railroad facilities under the control of defendant, from the south side of its property to its north or Bremen avenue side. The Merchants' Bridge comes down onto the levee of Hall street about five hundred

feet above Bremen avenue. The St. Louis Transfer Railway Company's tracks (otherwise called the Wiggins Ferry Transfer) runs on Hall street, which separates the two parcels of land used by defendant for stock yard purposes. The St. Louis Merchants' Bridge Terminal Railway Company connects with the Merchants' Bridge where it reaches Hall street, between the two parts of defendant's property, the Transfer Railway Company's tracks being in the middle of the street and the Merchants' Bridge Terminal Railway tracks one on each outer side of them. These are both switching railway companies, and under their respective ordinances are required to give switch connections with establishments adjacent to their lines, when ordinances authorizing such connections are passed by the municipal assembly of St. Louis. There is a track running along the edge of defendant's ground on the west side of Hall street and used as a joint switch by the St. Louis Transfer Railway Company and the Merchants' Bridge Terminal Railway Company for unloading stock in that part of defendant yard.

Before the right of way was taken from defendant's front it had quite a large river business, which was interfered with by reason of its river front being in a manner cut off from the remainder of the land. Defendant also had a driveway to the river running through the entire length of its yards; which, so far as it then existed, was entirely cut off by the roadbed. Plaintiff, however, laid iron girders thirty-five feet long over the runway which extended from defendant's main alley in its yards to the river, leaving a space of a few feet between the bottom of the girders and the roadway of defendant's driveway to the river. The driveway under the girders was used by defendant after the construction of the roadbed. The roadbed

VOL. 120, OCTOBER TERM, 1893.       549

The St. L., K. & N. W. R'y Co. v. The St. L. Union Stock Yards.

cut off a pump of defendant's by which water from the river was supplied for all its stock pens.

The evidence showed that by reason of a condemnation of the strip of land defendant was put to large expense in moving its buildings; damaged by being cut off from its river front, water supply, drainage; increased expense in conducting its business, etc., aside from the damages to the tract of land, and the strip taken for the roadbed.

As is usual in such cases, there was a wide difference in the opinion of witnesses as to the amount of damages sustained by defendant. As a fair illustration it may not be improper to state that the commissioners who were appointed to assess the damages fixed the amount at $49,280, while the jury fixed them at $14,500 with $622.50 interest; amounting in the aggregate to the sum of $15,123.50, for which amount judgment was rendered for defendant. The case is here on defendant's appeal.

William G. Clark, a witness for defendant, was asked the following questions: "*Q.* Are those large tracts in demand or are they few?" "*Q.* Are the switching facilities of that property ample for all lumber yards, all stock yard purposes?" "*Q.* As to lumber yards, you are familiar with lumber yards, are you not?" "*Q.* What was the effect of the construction of the Merchants' Bridge upon the value of the property in that part of the city?" Objections were made to all those questions and sustained by the court.

The first question should, in our opinion, have been permitted to be answered as the answer might have been very material with respect to the value of the property. . If there was no demand for such property, it could have had no marketable value, while if there was a demand for it, it necessarily follows that it did have such a value.

There was no error in sustaining the objections to the other questions as the answers to them could not possibly have thrown any light upon the issues before the jury.

The question to the witness, Buchanan, simply called for the expression of an opinion with regard to matters that the jury were as competent to judge of as the witness, and the objection thereto was properly sustained.

The objection to the question put to Capt. George W. Ford must have been sustained because of the fact that it called for the opinion of the witness as to the. value of the property to the owner and not to its market value. It was the market value that was the question of inquiry and consideration. Lewis on Eminent Domain, sec. 478; *Chicago v. Taylor*, 125 U. S. 161.

The witness, Isaac M. Mason, stated that he was acquainted with the property and that he was capable of expressing an opinion in regard to its value. In *Railroad v. Calkins*, 90 Mo. 538, it was said: "Upon the question of value of property, real or personal, and as to the amount of damages done to the property in controversy, parties shown by the evidence to be acquainted with the value or damage may, in connection with the facts, state their opinion as to the value or damages. *Shattuck v. Railroad*, 6 Allen, 115; *Vandine v. Burpee*, 13 Met. (Mass.) 288; *Simmons v. Railroad*, 18 Minn. 193; *Lehmicke v. Railroad*, 19 Minn. 481; *Swam v. Middlesex*, 101 Mass. 173; *Railroad v. McKinley*, 64 Ill. 338. In the case cited in 6 Allen, it is said: 'This is permitted as an exception to the general rule, and not strictly on the ground that such persons are experts; for such an application of the term would greatly extend its signification. The persons who testify are not supposed to have science or skill superior to that of the jurors; they have merely a

knowledge of the particular facts in the case, which the jurors have not. And as value rests merely in opinion, this exception to the general rule, that witnesses must be confined to facts, and can not give opinions, is founded in necessity and obvious propriety.' " See, also, *Railroad v. De Lissa*, 103 Mo. 125. Measured by the rule thus announced, the questions were proper and there was error in refusing to allow them to be answered.

There was no error committed in sustaining the objections propounded to the witnesses Palmer and Fletcher, as the facts sought to be shown by them could have no possible bearing on the value of the property or the damages thereto by reason of the construction of the road through it.

The evidence of the witness Crosby, as to the amount that it would cost defendant to build a levee so as to keep the water out of the stock chute, was immaterial under the facts and pleadings in this case for reasons that will hereafter be stated in this opinion with respect to the instructions in regard to the chute.

The witnesses, Babcok, Tyler, Valentine, Denny and Sullivan, were qualified from experience, although at other places different from St. Louis, to give their opinions in regard to the mode and manner of handling stock at stock yards, as well as to delays for want of switch connections, etc., but should not have been allowed to state facts connected with their own business, as some of them did on the trial of this case.

The objections to the questions propounded to witnesses, Grather and Morrison, by defendant, were properly sustained because predicated of an assumption of a state of facts that did not exist and may never exist.

After George S. Morrison, a witness for the plaintiff, had stated on his cross-examination that if an

embankment were built up along the river front and the property filled level with the embankment, it would be difficult to land steamers and that he did not think wharfs and piers could be built there with satisfactory result, he was asked the following question: "*Q.* Assume he had the right to build a wharf to the navigable part of the stream; if the foot of the embankment was at low water mark he had the right to build a private wharf out to the navigable part of the stream?" An objection to this question was sustained. We presume that the question was preliminary to others for the purpose of obtaining the witness' opinion as to the value of the riparian rights of defendant by reason whereof the value of its land would be increased.

In this state the law is well settled that the riparian proprietor of a navigable stream only owns to the water's edge. *Cooley v. Golden*, 117 Mo. 33; *Rees v. McDaniel*, 115 Mo. 145; *Naylor v. Cox*, 114 Mo. 232; *Benson v. Morrow*, 61 Mo. 347. But defendant had "the right of access to the navigable part of the river in front of his [its] premises, and the right to make a landing, a dock, a wharf or a pier for his [its] own use, or for the use of the public" (*Yates v. Milwaukee*, 10 Wall. 497); but such structure "must not encroach upon navigable waters, and vessels and the commerce navigating the stream must not be impeded in their passage or precluded from the use of all parts of the stream which are navigable in fact." *Paine Lumber Co. v. United States*, 55 Fed. Rep. 854; *Myers v. St. Louis*, 82 Mo. 367; *Railroad v. Illinois*, 146 U. S. 387. It seems, under the authorities cited, that the question was a proper one and that the witness should have been permitted to answer it.

Plaintiff's instruction is as follows:

"1.   The court instructs the jury that every person holds his property subject to the paramount right of

the state to take the whole or any part of it, for public purposes, paying the owner just compensation therefor. This power the state may delegate to a railroad corporation, and it has been delegated to the plaintiff in this case. The plaintiff having located its line of railroad through the property of the defendant, St. Louis Union Stock Yard Company, fully described in the evidence before the jury, and requiring for the purposes of its road the strip of ground fifty feet wide described in the petition, being part of the defendant's said property, has instituted this proceeding to determine the just compensation to be paid therefor.

"2.   This just compensation, or in other words, the damages to which defendant is entitled, is the difference in the fair maket value of defendant's whole property before and after the appropriation by plaintiff of the strip of land in the petition described, in view of the uses to which said strip condemned was to be thereafter applied.

"3.   The market value of the property means its actual value, independent of the location of plaintiff's road thereon, that is, the fair value of the property as between one who wants to purchase and one who wants to sell it; not what could be obtained for it in peculiar circumstances when greater than its fair price could be obtained; not its speculative value; not the value obtained through the necessities of another. Nor, on the other hand, is it to be limited to that price which the property would bring when forced off at auction under the hammer. The question is, if the defendant wanted to sell its property, what could be obtained for it upon the market from parties who wanted to buy and would give its full value.

"4.   The market value is not to be determined by the value of the strip in question to the plaintiff or the plaintiff's necessity of acquiring it. This consideration

must in no way be allowed to affect the determination by the jury of the value of either the whole property or of the strip sought to be appropriated by the plaintiff in this proceeding.

"5. The jury will consider the benefits, if any, and the disadvantages, if any, resulting to the remainder of defendant's said property from the appropriation by plaintiff of the strip of land in question for the purpose of its said railroad. The benefits to be considered and allowed by the jury are the direct and peculiar benefits, if any, which result to the remainder of defendant's said property, and not the general benefits which defendant derives in common with other landowners in the vicinity from the building of the road.

"6. And the jury are instructed that under ordinance number 15,377 of the city of St. Louis, read in evidence by plaintiff, the plaintiff is bound to allow connections with its main tracks built on the strip of ground in question, by switches and side tracks, by any other railroad, or any depot, warehouse, factory, store, lumber, coal, or stock yard, or depot yards, or any commercial or manufacturing establishment of any individual or corporation located on the said remainder of said defendant's property, adjoining the said strip of ground, and that no further ordinance of the said city is requisite or necessary to entitle any such individual or corporation so located on either side of said strip, and on said defendant's said property to such connection by switches and side tracks; and that if, in fact, benefits directly result to the defendant's said property adjoining said strip on the east and west sides thereof, or on either side, enhancing the value of the same by virtue of said rights of switch and side track connections, then the jury are instructed that such benefits are direct and peculiar benefits to the remainder of defendant's property, and not general benefits which

defendant derives in common with other landowners in the vicinity from the building of the road, and the same should be considered and estimated by the jury in determining whether the defendant is damaged by the appropriation by plaintiff of said strip of ground at all, and if damaged, to what extent.

"7. If the jury believe from all the evidence in the case that the market value of the strip of ground taken by the plaintiff's railroad, ascertained in the manner above pointed out, and, together with the damages, if any, resulting to the remainder of defendant's said property from the building of said railroad on said strip, exceed in value the benefits, if any, as above defined to the remainder of defendant's said property they will determine such excess and assess it as the defendant's damages.    But, on the other hand, if the jury believe from the evidence that the value of the peculiar benefits resulting from the building of plaintiff's said railroad on said strip of ground to the remainder of said defendant's said property equal and exceeding the fair market value of the strip of ground taken, and the damages to the remainder of defendant's said property, resulting from the building of plaintiff's said railroad on the said strip, that is to say, if the jury find that the fair market value of the remainder of defendant's said property, after the building of plaintiff's said railroad on said strip, and as a consequence of the direct and peculiar benefits resulting to said residue from the building of said railroad on said strip, is equal to, or greater than, the market value of defendant's entire property independent of the location of plaintiff's railroad and before the building thereof on said strip of ground; then the jury will find that the defendant has not been damaged and will return a verdict for the plaintiff.

"8.    To the extent that the property of defendant,

not taken by the plaintiff, was lessened, if at all, in value by the costs of removing and rebuilding the rendering house and rearranging the cattle chute and the cost of building an additional embankment to protect said chute from high water, such cost will be considered by the jury; but they are instructed that they should not allow and award as damages specific items of cost incurred by defendant for said purposes. And the jury are also further instructed that prospective loss of future profits to. defendant's business can not be allowed.

"9. The jury are instructed that for the purposes of this case, the defendant has the right of passage between its yards, west of plaintiff's right of way, and the river east under the bridge erected by plaintiff; and if the jury believe from the evidence that the defendant's stock chute as arranged to pass under said bridge is as sufficient for the purpose for which it was designed as before the building of plaintiff's railroad, then they will allow no damages for interference with said chute, beyond the amount of the cost already incurred by defendant in making said arrangement, and such further sum as the jury may find from the evidence, it will reasonably cost the defendant to erect an embankment to protect said chute from high water.

"10. The jury are instructed that there is no evidence before them as to the damages awarded to the defendant by the commissioners appointed in this case, and that they must make their findings solely and exclusively on the evidence adduced before the jury, and the law as declared in the instructions of the court.

"11. If, notwithstanding the switch facilities which the land of defendant had prior to the location across it of plaintiff's road, the jury believe that the portions of defendant's land not taken by plaintiff were, in fact, increased in value for sale in the market,

and that such increase in value was caused by the peculiar benefits resulting directly to said portions of said land from the location and building of plaintiff's road, and from the right to side track and switch connections with said road secured to said portions of land under ordinance number 15,377, of the city of St. Louis, read in evidence by the plaintiff, then the jury are instructed that it is of no importance, whether after the building of said railroad, said property could or could not be used for the same purposes to which it had been formerly applied; nor is it of any importance whether defendant thought or believed that the property had already adequate side track and switch facilities by connection with some other railroad than plaintiff's, nor whether defendant did or did not desire side track and switch connections between plaintiff's railroad and the said property not taken, nor whether defendant itself could or would use such connections with plaintiff's railroad.

"12.   That is to say, the only question for the jury to determine on this branch of the case is, whether the property of the defendant not taken by the plaintiff was or was not increased in market value by benefits thereto, derived as aforesaid, and if it was so increased in market value by benefits, then whether such increase was sufficient to compensate defendant for the strip of ground taken by the plaintiff and also for the damages, if any, resulting from such taking to its remaining property."

There are a number of objections urged against this instruction.   The first that we think necessary to notice is that it assumes as a fact that there were peculiar benefits resulting to the remainder of defendant's property by the taking of the strip in question, which was a material and controverted issue.   For convenience we have numbered the paragraphs in the

instruction.    By the first part of paragraph seven, the jury were told if the market value of the strip taken together with the damages, if any, resulting to the remainder of defendant's land, exceed in value the benefits, if any, before defined they will determine the excess and assess it as defendant's damages; and then proceeds as follows: "But, on the other hand, if the jury believes from the evidence that the value of the peculiar benefits resulting from the building of plaintiff's said railroad on said strip of ground to the remainder of defendant's said property equal or exceed the fair market value of the strip of ground taken, and the damages to the remainder of defendant's said property resulting from the building of plaintiff's said railroad on said strip, that is to say, if the jury finds that the fair market value of the remainder of defendant's said property, after the building of plaintiff's said railroad on said strip, and as a consequence of the direct and peculiar benefits resulting to said residue from the building of said railroad on said strip, is equal to, or greater than, the market value of defendant's entire property, independent of the location of plaintiff's railroad and before the building thereof on said strip of ground; then the jury will find that defendant had not been damaged and will return a verdict for the plaintiff."

This part of the instruction was erroneous, because it assumed that defendant's land derived some peculiar and special benefits by reason of the location of the road, while that was one of the controverted questions before the jury.    An instruction less objectionable was condemned by this court in *Stone v. Hunt*, 94 Mo. 475.    That was an action for damages caused by the falling of the walls of a building, and SHERWOOD, J., in delivering the opinion of the court, said: "There was error committed in the second and third instructions in

these particulars: The second instruction assumes the existence of certain facts, to wit: It assumes, in its latter portion, that damage resulted to plaintiff 'by reason of the carelessness or negligence of said persons so engaged in taking down said walls.' *Comer v. Taylor*, 82 Mo. 341; *Donnell v. Bank*, 80 Mo. 165; *Peck v. Ritchey*, 66 Mo. 114;" *Wilkerson v. Thompson*, 82 Mo. 317.

The same error is subsequently contained in the instruction (par. 11) when it says: "And such increase in value was caused by the peculiar benefits resulting directly to said portions of said land from the location and building of plaintiff's said road, and from the right to side track and switch connections," etc.

Paragraph eight is faulty in that it told the jury that "To the extent that the property of defendant, not taken by the plaintiff, was lessened, if at all, in value by the costs of removing and rebuilding the rendering house and arranging the cattle chute and the cost of building an additional embankment to protect said chute from high water, such cost will be considered by the jury; but they are instructed that they should not allow and award as damages special items of cost incurred by defendant for said purpose." This part of the instruction singled out particular facts and directed the jury to consider them in estimating defendant's damages. Similar instructions have frequently met with the disapproval of the appellate courts of this state as calculated to mislead and unduly influence the jury. *Barr v. City of Kansas*, 105 Mo. 550; *Kendig v. Railroad*, 79 Mo. 207; *Judd v. Railroad*, 23 Mo. App. 56. The jury should have been instructed to take into consideration all the facts in evidence and not have been told by implication at least to only take into consideration the particular facts pointed out by the instruction.

The same may be said with respect of the instruc-

tion paragraphs 12 and 18, given on behalf of defendant. This part of the instruction ignored the right of defendant to recover anything for the additional expense that would necessarily be incurred by defendant in handling stock for water or injury to the warehouse, all of which should have been considered by the jury in estimating the damages.

With respect of the same matter embraced within paragraph 9 of plaintiff's instruction the defendant asked, and the court refused, the following instructions:

"8. The court instructs the jury that the defendant company had no right to compel the plaintiff to maintain and keep for the use of defendant company, the runway or cattle chute, now constructed under the tracks of plaintiff company, and that the use of such runway or cattle chute, as the same is now constructed and maintained, is a mere license on the part of plaintiff, which it has at any time the right to revoke at its own will and pleasure."

"16. The court instructs the jury that the railroad company is entitled to the exclusive possession and control of its right of way across the land of the St. Louis Union Stock Yards, and neither the stock yards nor any one claiming said land, or any part thereof, has the right to cross said railroad tracks, except upon a street or alley."

The court modified the last instruction by adding the following: "And except by or through the driveway or chute for stock under the iron bridge mentioned in the evidence" and then gave it as modified, to all of which defendant objected.

Defendant's contention is that plaintiff's instruction assumed that the defendant had the right to use the passage or chute, and if, as arranged, it was as convenient as before the building of the railroad, then they could not allow damages for interference with the

chute, except the cost of the arrangement and the future cost of an embankment; thereby proceeding on the theory that the chute or passage way would remain with the continuing right on defendant's part to use it; while under the law as presented by its refused instructions, the defendant could not compel plaintiff to keep the chute open for defendant's use, and that it was a mere license which plaintiff could revoke at any time at pleasure.

No right of crossing its right of way or under its track was reserved to defendant by plaintiff in its petition, nor was there any offer made by plaintiff at the time of the trial and in open court to construct and maintain for the defendant a crossing of any kind as was done in the case of *Railroad v. Clark*, decided at this term. The plaintiff had the right under the constitution and laws of the state to condemn a strip of land through defendant's property fifty feet wide for its roadbed, and as a necessary incident thereto, the right to use the surface of the land so condemned, and so far above and beneath the surface as necessary for the purposes intended. While by such proceeding it could only acquire an easement over the land condemned, yet the easement acquired entitled it to its free, uninterrupted and exclusive use, including not only its roadbed but the entire right of way.

In *Railroad v. Clark, supra*, this court, speaking through BLACK, C. J., says: "Where the condemning company proposes to reserve to the landowner some right or easement not reserved by the statute itself, the reservation should be made in the original or by an amended petition. In other words, the petition should specially set forth what the company proposes to. take. The easement reserved to the landowner should be specifically defined and located, so that the rights of the parties may be then and thereafter protected."

VOL. 120—36

In the case in hand no right or easement is reserved by the statute. All the right that defendant has to cross plaintiff's right of way is a mere license to use the chute or stock crossing given to it by the instruction in this case and acquiescence by its use, which might be revoked at any time at the pleasure of the plaintiff.

The case of *Railroad v. Miller*, 125 Mass. 1, was a condemnation proceeding. The railroad crossed the defendant's cranberry bog upon an embankment through which an opening was made for drainage; the company built a culvert on adjoining land and dug ditches to it by the side of the embankment in order to provide for such drainage. They also built barways and laid planks for a crossing. There was evidence that defendant used these provisions for crossing and for drainage. The railroad company contended that the jury should be required to take into consideration in reduction of damages this use by defendant. It was held that: "No right of crossing or of drainage was reserved in the original location filed by the company, or ordered by the county commissioners under the provisions of the General Statutes, chapter 63, section 40. The right to the exclusive use of the land taken was acquired by the location. The title to such exclusive use was then vested in the company; the value of such title was the measure of the landowner's damages. * * * The fact that the respondent had used these privileges can not be availed of to diminish his claim for damages. * * * Such use was merely permissive and subject to the paramount right of the railroad corporation."

In *Railroad v. McGrew*, 104 Mo. 282, the court says: "Though the interest acquired by a railroad company to its right of way, through condemnation proceedings, is regarded as a mere easement, yet the

law contemplates the right to an absolute and exclusive possession and control thereof, as against the private rights of the owner of the fee.   *   *   *   The only exception made by the statute being for the benefit of the owner of a farm divided by the road, who is entitled to a private way or farm crossing under section 809, Revised Statutes, 1879." Again the court says: "No sufficient reason can be seen why, by agreement between the parties interested, certain rights, not inconsistent with the public interest, might not have been reserved by the landowner so as to secure to himself a limited use of the right of way, under such circumstances as existed in this case."

All of the authorities cited by the plaintiff as announcing a contrary rule from that herein stated were reviewed by the court in the case of *Railroad v. Clark*, *supra*, and the conclusion reached as heretofore stated in this opinion.

A license is either implied from the acts and conduct of the parties, or by contract, and, as a general rule, may be revoked at any time at the pleasure of the licensor.   "A license is strictly confined to the original parties, and can neither operate for nor against third persons."   6 Am. and Eng. Encyclopedia of Law, p. 141.   Under the pleadings and evidence in this case, we are constrained to hold that defendant's right to use the stock chute under plaintiff's roadbed, and across its right of way, was a mere license revocable at pleasure.   *Pitzman v. Boyce*, 111 Mo. 387, and authorities cited.   The right of a railroad company, after having constructed its roadbed, to make such changes in it as experience may designate as proper, is, of necessity, a continuous one.   *Moss v. Railroad*, 85 Mo. 86.   The court committed error in not excluding the evidence introduced with respect to the cattle chute or

crossing, and in giving plaintiff's instruction and in refusing the instructions asked by defendant.

Upon a retrial, paragraphs 7, 8, 9, and 10 of plaintiff's instruction should be entirely omitted, and 11 and 12 changed or amended so as to read as follows:

"11. If, notwithstanding the switch facilities which the land of defendant had prior to the location across it of plaintiff's road, the jury believe that the portions of defendant's land not taken by plaintiff were, in fact, increased in value for sale in the market, and that such increase in value was caused by peculiar benefits resulting directly to said portions of said land from the location and building of defendant's road, and from the right to side track and switch connections with said road secured to said portions of land under ordinance number 15,377, of the city of St. Louis, read in evidence by the plaintiff, then the jury are instructed that it is of no importance, whether after the building of said road, said property could or could not be used for the same purposes to which it had been formerly applied.

"12. The only question for the jury to determine is, whether the property of defendant not taken by plaintiff was or was not increased in market value by benefits thereto, derived as aforesaid, and if it was so increased in market value by benefits, then whether such increase was sufficient to compensate defendant for the strip of ground taken by plaintiff, and also for the damages, if any, resulting from such taking to the remainder of the property."

There was no error in refusing instructions numbers 1, 2, 3, 4, 5, 6, 7 and 9 asked by defendant. Number 1 was in effect given in number 2; number 7 by 11; while the others were with reference to particular facts, calling the attention of the jury thereto; numbers 8, 14 and 16 should have been given as asked.

Plaintiff's instruction, aside from the objections which we have endeavored to point out, is bad because a comment on the evidence and difficult of comprehension. It is very ingeniously drawn, but rather inclined to confuse the minds of the jury than to enlighten them and to point out to them some plain and definite rules by which they were to be governed in considering of their verdict. It is not in keeping with our code of practice but is more in the nature of a charge to the jury which is the practice in other courts not of this state. We have reference to paragraphs 7, 8, 9, 10 and part of 11 and 12. Instructions can not be too pointed, and should never, in a case like the one in hand, undertake to cover the entire case and all of the many questions involved by one instruction, lest it may confuse rather than enlighten. *Hickman v. Link*, 116 Mo. 123. The parts of the instruction now under consideration, if not bad because a comment or summing up the evidence, are either bad because a repetition of what was given, or for some reason already suggested in this opinion.

In *Jones v. Jones*, 57 Mo. 138, it is said that "An instruction commenting upon particular portions of testimony, to the exclusion of others, although correct *pro tanto*, is calculated to mislead the jury, and should be refused."

In *Couch v. Gentry*, 113 Mo. 248, in speaking of a similar instruction the court says: "Such statements as these may be proper in those jurisdictions where the judge may in the form of a charge to the jury discuss and sum up the evidence; but they have no proper place in our system of giving written instructions before argument."

So in *Forrester v. Moore*, 77 Mo. 651, the court says: "Principles of law and rules in practice, while they should have an unvarying character, and be as

guide-boards at all times, yet care must ever be vigilantly exercised to limit their proper application. They must be just so flexible as to recognize the reasonable differences in the legal *status* and qualities of cases as they arise. For instance, because, in a given class of cases, .and under peculiar phases of fact incident to them, it is permissible to array these facts in an instruction and declare to the jury the result which the law attaches to such facts when proven, counsel must not conclude that under the sanction of the language employed therein by the court license is given to indite legal essays or inject an argument to the jury in an instruction.   *   *   *   Lord COKE said: 'With respect to the question of law, the jury must not respond, but only the judges. So, or in like manner, or under like restrictions, the judge must not respond to questions of fact, but only the jury.' It is the recognition of this province of the jury that has so repeatedly and persistently induced our courts to pronounce against instructions commenting on the evidence, or singling out one or more facts of the case and directing the attention of the jury that way—and this for the reason that such instructions unduly influence from the bench the judgment of the jury, and tend to substitute for their estimation and analysis of a given fact, the mental and moral bent of the judge. If this may be done in one case it can in another, until the judge from the bench will invade the jury box and displace the twelve triers of the facts.''

The judgment of the circuit court is reversed and cause remanded for retrial in conformity with this opinion.   All of this division concur.