METROPOLITAN STREET RAILWAY COMPANY, Appellant, v. WALSH et al.

Division Two, June 19, 1906.

1. **CONDEMNATION: Evidence of Value: Price Paid in Vicinity: Exception.** In arriving at the fair market value of property sought to be condemned by a railway company, evidence of what the company recently paid by purchase for other like property in the immediate vicinity similarly situated, to be used for like railroad purposes, is not competent. That is an exception to the well-established rule that a reliable method of arriving at the fair market value is to consider testimony of recent bona-fide sales of similar lands in the vicinity.

2. ——: ——: ——: **Purpose for Which Purchased: Knowledge of Vendor: No Evidence: Assumed at Trial.** Where there was no positive and direct testimony of the purposes for which other similar property in the vicinity was recently purchased by the railroad company, and none that the vendors knew that it was being purchased for the purpose of being used for railroad purposes in connection with the property sought to be condemned, yet if both sides assumed at the trial that it was purchased for that purpose, it will be held on appeal that it was purchased for that purpose.

3. ———: ———: ———: Invited by Respondent: Waiver. Where the landowner, in order to establish the fair market value of the land sought to be condemned, introduced evidence of the price paid by the railroad company for similar land in the vicinity recently purchased, and that testimony was objected to as not being competent, and the court's ruling admitting it excepted to, the railroad company did not waive its right to' have the incompetency of that testimony considered on appeal by subsequently introducing evidence on its part of the price at which it bought other tracts in the vicinity to be used for the same purpose as that sought to be condemned is to be put. The error was invited by the land-owner, and the company was entitled to make the best of the situation confronting it.

4. ———: ———: Interested Witness: Opinion. A witness having an interest in the property, familiar with the property and the market value in the neighborhood, is competent to express an opinion in relation to its value, notwithstanding such interest; but the opposite party may show that interest for the purpose of affecting the weight to be attached to his testimony.

5. ———: ———: Acquisition of Neighboring Property By Others. Testimony to show an increase in the value of the property sought to be condemned, by the acquisition by large business concerns of property in the neighborhood, is not competent unless such acquisition was made prior to the condemnation proceeding.

6. ———: ———: Attempt at Purchase. It may be proper to show that, prior to the institution of condemnation proceedings, there was a failure to agree upon the price to be paid for the property, but such showing is not essential, nor is it competent to go into the details of the negotiations or show the different amounts offered.

7. ———: ———: Location: Switching Purposes. To show elements of the value of the property sought to be condemned, its location near certain railroad tracks and that it was suitable for switching purposes may be shown.

8. ———: ———: Offers to Sell to Owner: Price: Cross-Examination. Testimony of a witness that he had offered to sell to a defendant in the condemnation proceeding property near the property sought to be condemned at a certain price, is not competent on behalf of plaintiff. And cross-examination of one of defendant's witnesses as to the price certain persons offered to sell such properties to him should be excluded.

9. ———: Instruction: Market Value. It may not be error to instruct the jury that the market value of land is "what it would fairly bring in the hands of a prudent seller at liberty

to fix the time and conditions of sale," but it is better to follow the definition contained in the instructions approved in Railroad v. Porter, 112 Mo. 369, and in the Stock Yards Case, 120 Mo. 541.

10. ———: ———: **Compensation.** The general rule in estimating the compensation to be allowed the owner whose land has been appropriated to a public use is "that reference should be had to the use for which the property is suitable, having regard to the existing business or wants of the community or such as may reasonably be expected in the immediate future." And guided by this rule, instructions numbered 4 and 5 for defendants are approved.

11. ———: ———: **Refused: Elements of Value: Not Embraced in Those Given.** An instruction offered by plaintiff in the nature of a detailed explanation of what is meant by market value, cautionary in its character and particularly pointing out to the jury in detail how the market value is to be determined, and embracing certain features not embraced in other instructions given, in all respects a correct instruction for the plaintiff, should be given. But where the instructions given fully cover all the elements of market value and correctly define that term, others on the subject, which are mere repetitions, should not be given.

12. ———: **Excessive Damages: Award of Commissioners.** It is with great reluctance that appellate courts undertake to interfere with the findings of the jury as to the amount of damages the landowner has received as the result of the condemnation of his property for a public use. He is entitled to receive only the fair market value of his property, but the verdict can be approved only when it is reached from a consideration of testimony recognized by the law. But a wide difference between the award made by the commissioners and that made by the jury is no ground for setting aside the verdict as being excessive.

Appeal from Jackson Circuit Court.—*Hon. Jas. H. Slover*, Judge.

REVERSED AND REMANDED.

*John H. Lucas* for appellant.

(1) The court erred in admitting incompetent evidence. a. Michael Walsh: Value of property. b. John Donnelly: Number of square feet in this and other

property. c. George Hoffman: Argumentative and speculative. d. Mary Miller: Price plaintiff paid for her property. e. James H. Looney: Price paid for his property. f. Ed P. Kennedy: Comparison with other properties. g. P. H. Madden: comparison with other property. h. J. Scott Harrison: Offers made by plaintiff for defendants' property. i. Comparison with other property. a., b., c., d., e., f.: Railroad v. Calkins, 90 Mo. 543; Springfield v. Schmook, 68 Mo. 396; Railroad v. Heiger, 139 Mo. 320; Peoria Gas Co. v. Railroad, 146 Ill. 372; Markowitz v. Kansas City, 125 Mo. 490; Railroad v. McGrew, 104 Mo. 298; Railroad v. Eby, 152 Mo. 611. g. h.: Howard v. Coshow, 33 Mo. 118; Pier v. Heinrichoffen, 52 Mo. 333; Wilson v. Rutherford, 69 Mo. 312. (2) The court erred in rejecting competent evidence, viz: a. Michael Walsh: Offers of other property made to him that was adjacent to the property in controversy. b. M. W. Barber: Offers to sell other property adjacent to that in controversy. Railroad v. Fowler, 142 Mo. 677. (3) The court erred in giving instructions asked by defendants. Railroad v. Stock Yards Co., 120 Mo. 541; Clark v. Kitchen, 52 Mo. 317; Greer v. Parker, 85 Mo. 107; Camp v. Wabash, 94 Mo. App. 284; Bank v. Murdock, 62 Mo. 70; Tibbe v. Kamp, 154 Mo. 545. (4) The court erred in refusing to give instructions asked by plaintiff. Railroad v. Knapp-Stout & Co., 160 Mo. 408; Railroad v. Stock Yards, 120 Mo. 541; Richard v. Barnard, 9 Hun. 104. (5) The court erred in overruling the motion of plaintiff for a new trial. The verdict is the result of passion and prejudice.

*Lathrop, Morrow, Fox & Moore* and *Cyrus Crane* for respondent.

(1) Admission of Evidence. (a) Walsh's testimony as to value was admissible. He was a defendant, one of the owners, familiar with the property, knew

its value. Thomas v. Mallinckrodt, 43 Mo. 65; Tate v. Railroad, 64 Mo. 144; Railroad v. Calkins, 90 Mo. 538; Railroad v. DeLissa, 103 Mo. 130; Railroad v. Stock Yards, 120 Mo. 541; Railroad v. Donovan, 149 Mo. 93. (b) John Donnelly's testimony: The lots were irregular in shape. It was therefore proper to show the quantity of land. (c) Geo. Hoffman: It is proper to show what use can be made of the land and its value by reason thereof. 2 Lewis on Eminent Domain, p. 1054; Boom Co. v. Patterson, 98 U. S. 407; Bridge Co. v. Ring, 58 Mo. 491; Webster v. Railroad, 116 Mo. 118; Railroad v. McGrew, 104 Mo. 290. (d) Miller & Looney testimony: It is proper to show what was paid for other similarly situated property. Railroad v. Clark, 121 Mo. 185; Railroad v. Fowler, 142 Mo. 678; In re Boulevard, 127 Mo. 422; Markowitz v. City, 125 Mo. 490. The record does not admit of the objection plaintiff is now making. Railroad v. Clark, 121 Mo. 185; Railroad v. Heigler, 139 Mo. 315; Young v. Thrasher, 61 Mo. App. 413. (e) Madden's cross-examination: No error. Plaintiff had already shown the same thing. (f) Harrison cross-examination: No error. Plaintiff first went into offers made to Walsh. Plaintiff's instruction 5 excluded all offers and settles the matter. (2) Evidence properly excluded. Offers to sell not admissible. 10 Am. and Eng. Ency. Law, 1157. (3) Defendants' instruction No. 3 correct. 10 Am. and Eng. Ency. Law, 1152; Railroad v. Porter, 112 Mo. 369. Nos. 4 and 5 were correct. Authorities under point 1, c, supra. (4) Defendants' instructions. Those refused were fully covered by defendants' given No. 3 and defendants' Nos. 3 and 4. (5) Verdict not excessive.

FOX, J.—This cause is here upon appeal by the railway company from a judgment of the Jackson Circuit Court assessing damages for property taken in a condemnation proceeding begun by the plaintiff railway company.

It can serve no useful purpose to reproduce the petition upon which this proceeding was predicated, but it will suffice to state generally the purpose of it. On June 20, 1902, the Metropolitan Street Railway Company filed in the office of the clerk of the circuit court of Jackson county, Missouri, its petition, wherein it sought to appropriate for its power house, certain lands of the defendants, that is to say, lot 323, block 33, Kansas City, Missouri. On July 18, 1902, in pursuance of the filing of the petition as herein indicated, commissioners were appointed by the circuit court, and attending to the discharge of the duties imposed upon them by virtue of that appointment, proceeded to examine the lands sought to be condemned, for the purpose of making an assessment of damages by reason of the taking of the property mentioned in the petition, and after such examination assessed the damages sustained by the defendants by reason of the condemnation of their property at the sum of forty-two hundred and sixty dollars, and filed their report of such assessment in the office of the clerk of the circuit court of Jackson county, Missouri. On August 4, 1902, defendants filed in the circuit court in which this proceeding was pending, their exceptions to the commissioners' report and demanded a trial by a jury, which was by the court awarded to them. On March 3, 1903, a trial by a jury was had upon the question of damages sustained by reason of the condemnation of the property of defendants.

It is not essential to the determination of the legal proposition involved in this proceeding to detail the testimony introduced upon this trial; it is sufficient to say that there was testimony by both plaintiff and defendants as to the value of the property taken which was very much in conflict as to the amount of the value of the property. This testimony introduced on the part of the respondents, to which objections were urged on the part of the appellant, as well as the testimony which

was offered on the part of the appellant and excluded, will be referred to and considered during the course of the opinion, hence there is no necessity for reproducing it in this statement. At the close of the evidence, at the request of the defendants, the court instructed the jury as follows:

"1. The court instructs the jury that under the Constitution of the State private property cannot be taken for public use without just compensation being paid to the owner, and the law of the State gives the owner the right to have such compensation determined by a jury. The plaintiff in this case has taken lot 323 in block 33 in Old Town, an addition to Kansas City, which was the property of defendants. Your verdict, therefore, must be for defendants, and in assessing the just compensation to be paid them you must allow them the fair market value of said lot as it is shown by the evidence to have been on July 18, 1902.

"2. You will not, in determining the value of defendants' land, consider or be in any way influenced by the fact that the commissioners allowed the defendants the amount stated in their report read to you. Such report is not admitted as evidence of the value of said land.

"3. By the term 'fair market value,' as used in these instructions, is meant the price which property will bring when it is offered for sale by one who is willing, but is not obliged, to sell it, and is bought by one who is willing or desires to purchase, but is not compelled to do so. It does not mean the price which the property would bring under a forced sale, or where the party selling is compelled to or under the necessity of selling, but what it would fairly bring in the hands of a prudent seller at liberty to fix the time and conditions of sale.

"4. In determining the value of the land in controversy, taken by plaintiff, the jury may take into consideration its location, the uses and purposes for which

the property is suitable or adaptable considering such location, and having regard, not alone to the existing business wants of the community in which the same is located, but also to such uses as may be reasonably expected in the near future, together with all the surroundings and conditions as shown in evidence in this case; and you may also take into consideration other bona-fide sales of property in the immediate vicinity and similarly located, made at or about the time the commissioners made their report in this case, to-wit, July 18, 1902.

"5. In determining the uses and purposes for which defendants' lot was suitable or adaptable, the jury are not confined solely to the use, if any, made of said lot at the time it was taken by plaintiff, but may also consider such uses, if any, for which it was reasonably adaptable at that time, considering its location and surroundings."

At the request of the plaintiff the court gave instructions numbered 3, 4 and 5, which were as follows:

"3. The market value is not to be determined by the value of the same to the plaintiff, or of the plaintiff's necessity for acquiring it. This consideration must in no way be allowed to affect your determination of the value of the property sought to be appropriated by the plaintiff in this proceeding.

"4. The just compensation, or in other words, the damages to which the defendant is entitled, is the fair market value of the defendants' property at the time of the appropriation by the plaintiff.

"5. You are further instructed that in considering the question of the actual value of the property in controversy you will exclude from your mind all testimony relative to any offers that might have been made or claimed to have been made by the railroad company through its president or any other person. The only purpose for the admission of such testimony being to show that the plaintiff had attempted to agree with the

defendants, and all testimony in relation to any offer that might have been made upon the part of the railway company is hereby withdrawn and excluded from your consideration for any other purpose than that stated.''

Plaintiff requested the court to give the following instructions, numbered 1 and 2, which request was by the court refused, to which ruling plaintiff preserved proper exceptions:

''1.   The market value of the property means its actual value, independent of its appropriation by the plaintiff, that is, the fair value of the property as between one who wants to purchase and one who wants to sell it; not what could be obtained for it in peculiar circumstances when greater than its fair price could be obtained; nor its speculative value; nor the value obtained through the necessities of another.   Nor, on the other hand, is it to be limited to the price which the property would bring when forced off at auction under the hammer.   The question is if the defendants wanted to sell their property what could be obtained for it upon the market from parties who wanted to buy and would give its actual value?

''2.   The market value of the property means its actual value independent of the purposes for which it is to be used by the railroad company; that is, the fair value of the property as between one who wants to purchase and one who wants to sell it.   Not what could be obtained for it in peculiar circumstances when greater than its fair price could be obtained; nor its speculative value; nor the value obtained through the necessities of another; nor, on the other hand, is it to be limited to that price which the property would bring when forced off at auction under the hammer.   The question is, if the defendant wanted to sell his property, what could be obtained for it upon the market from the parties who wanted to buy and would give its full value?   The market value is not to be determined by the value

of the railroad company or the railroad's necessity for acquiring it. This consideration must in no way be allowed to affect the determination by the jury of the value of the property sought to be appropriated by the railroad company.''

The cause was submitted to the jury upon the evidence and instructions of the court, and they returned their verdict finding the issues for the defendants, and assessing their damages at $14,500, as a just compensation to be paid for the land described in the petition sought to be appropriated by the plaintiff, for its use.

Motion for new trial was timely filed and by the court overruled. Judgment was entered in accordance with the verdict returned and from this judgment plaintiff prosecuted its appeal to this court and the record is now before us for review.

### OPINION.

The record in this cause discloses numerous assignments of error respecting the action of the court during the progress of the trial. The complaints of appellant, as indicated in the brief, as well as in oral argument of learned counsel for appellant, are directed mainly to the admission of incompetent evidence offered by respondents and the exclusion of competent evidence offered by appellant.

I. The most serious proposition with which we are confronted in this cause is the admission of the testimony offered by respondents as to the amount paid by the railway company for the Miller and Looney properties, located in the same block, near the lot of respondents, sought to be appropriated by appellant in this proceeding. Doubtless this testimony as to the sale by Mrs. Miller and Looney to the appellant railway company, was introduced and admitted upon the theory that it was within that rule which authorizes the

197 Sup.—26

introduction of evidence of sales of other similar property in the neighborhood at about the same time, for the reason that it tends to show the fair market value of the property sought to be condemned.  The first inquiry as to the Miller and Looney property which had been purchased by the railway company, was made of witness Donnelly.  The simple inquiry in respect to this property made of him, was as to the area or number of square feet in the Miller and Looney tracts, as well as the number of square feet in the Walsh lot, the property which is sought to be condemned by this proceeding.  The inquiry of this witness as to the area of these different lots of land, was manifestly preparatory to the introduction of the owners of the Miller and Looney lots as witnesses to testify as to the amounts actually paid them for the property by the railway company.  Subsequently the owners were introduced and did testify.  That we may fully appreciate the testimony of Mrs. Miller and Mr. Looney it is well to reproduce their testimony so far as it is applicable to the question now being considered.  The inquiry was made of Mrs. Miller as to the sale of her property as follows:

"Q.  Kindly state to the jury how much it was sold for?

"By Mr. Lucas:  Was it sold to the Metropolitan Street Railway Company?  A.  I don't know; I think so.

"Mr. Lucas.  We object to the question as incompetent, irrelevant and immaterial, and not a proper criterion for fixing the value of this property.

"The court overruled the objection, to which ruling plaintiff at the time duly excepted.

"Q.  By Mr. Crane:  State what it sold for?  A. $15,000."

The following testimony was given by James H. Looney in respect to the sale of his property:

"Q.  Please state how much you got for it.

"Mr. Lucas:  I make the same objection to the tes-

timony of Mr. Looney on that point that I made to Mrs. Miller's testimony. Any settlement that the plaintiff company made with him should not be taken as a criterion or standard of value in that neighborhood.

"The Court: You will have an opportunity to explain that; but the testimony is competent.

"To this ruling of the court plaintiff at the time duly excepted.

"Q. What did you sell it for? A. Something over $21,000.

"Q. And you sold it last June? A. Yes, sir."

Was this testimony admissible and does it fall within the rule of evidence of that character heretofore indicated? This is the most important question presented to our consideration in the disclosures of the record before us.

The rule that sales of similar property to that involved in the condemnation proceeding, made in the neighborhood about the same time, is admissible to aid the jury in determining the damages to which the owner was entitled, is well settled in this State, as well as in many other States. The object in condemnation proceedings is to ascertain the general market value of property sought to be appropriated, and it was expressly ruled by this court in Railroad v. Clark, 121 Mo. 1. c. 185, that "no more reliable method of determining the fair market values of lands can be reached than that derived from bona-fide sales of similar lands in the vicinity." In support of the rule announced in that case this court cited "Lewis on Eminent Domain, section 443; 6 Am. and Eng. Ency. Law, 619, and cases cited by each." The rule announced in the Clark case above cited has never been departed from in this State, but was subsequently followed and approved in In the Matter of Forsyth Boulevard, 127 Mo. 417; Markowitz v. Kansas City, 125 Mo. 490, and Railroad v. Fowler, 113 Mo. 458.

Mr. Lewis, in his treatise upon the Law of Emi-

nent Domain, very clearly indicates where the weight of authority rests upon this question. He says: "The propriety of allowing proof of sales of similar property to that in question, made at or about the time of the taking, is almost universally approved by the authorities." It is further said by this same eminent author upon this subject, that "in regard to the degree of similarity which must exist, between the property concerning which such proof is offered and the property taken, and the nearness in respect of time and distance, no general rule can be laid down. These are matters with which the trial judge is usually conversant, and they must rest largely in his discretion."

This almost universally approved rule of evidence in respect to determining the value of property sought to be appropriated in condemnation proceedings, is based upon the idea that sales, when made in a free and open market, where a fair opportunity for competition exists, is a very important factor to be considered in determining the value of the particular property sought to be condemned, provided, of course, that such sales relate to property with at least a reasonable degree of similarity, with respect to character and location, and that such sales have reference to sales of property made at or about the same time of the institution of the suit in which it is sought to condemn the property, the value of which is to be ascertained in the proceeding.

The crucial question with which we are confronted upon this proposition, is as to whether or not the sales of the Miller and Looney property, which were made to the Metropolitan Street Railway Company, who is now seeking to condemn the property involved in this proceeding, fall within the rule as heretofore indicated, or is it within any clearly recognized exception to such rule. Mr. Lewis, the eminent author upon the subject of Eminent Domain, heretofore cited, and whose announcement of the rules of law applicable to

the suject of ascertaining the value of property sought to be condemned, have been uniformly approved by this court, announces the doctrine that testimony offered for the purpose of showing what the party who is seeking to condemn property by a proceeding has paid for other property, does not fall within the general rule as heretofore indicated, and is incompetent for the purpose of ascertaining the value of property sought to be appropriated in a condemnation contest. The learned author clearly points out the reason and ground upon which such exception to the general rule is predicated. In treating of this subject he says: "What the party condemning has paid for other property is incompetent. Such sales are not a fair criterion of value, for the reason that they are in the nature of a compromise. They are affected by an element which does not enter into similar transactions made in the ordinary course of business. The one party may force a sale at such price as may be fixed by the tribunal appointed by law. In most cases the same party must have the particular property, even if it costs more than its true value. The fear of one party or the other to take the risk of legal proceedings ordinarily results in the one party paying more or the other taking less than is considered to be the fair market value of the property. For these reasons such sales would not seem to be competent evidence of value in any case, whether in a proceeding by the same condemning party or otherwise."

The doctrine announced by this learned text-writer, in the nature of an exception to the general rule, upon the subject of evidence applicable to proceedings of this character, finds support in many well-considered cases in other States. In Peoria Gas Light Co. v. Railroad, 146 Ill. 272, this proposition was fully discussed and the opinion by the learned judge in that case exhaustively reviewed all the authorities upon the subject now in hand. The general rule as applicable to

the admission of testimony of sales of similar property, which has uniformly been followed by this court, was fully approved in that case, but on the other hand when the court reached the proposition as to the admissibility of the consummation of sales by the condemning party and what such party paid for other property for the purpose of determining the value of the property sought to be appropriated in the proceeding, it equally, with as strong and convincing reason and logic, announced its approval of the law as stated in the nature of an exception to the general rule by Mr. Lewis on the subject of Eminent Domain. In that case the question was sharply presented as to the admissibility of such testimony, evidence being admitted by the trial court as to what the railway company which was seeking by proceeding to condemn certain property, has paid to other property-owners for their lands along the right of way. After reviewing all the authorities, the court thus announced its conclusion: ''We are referred to no decision in this State in which the opposite view as to the admissibility of evidence of the character of that now under consideration has been taken. In fact, so far as we are aware, the question has never been passed upon by this court, and we are therefore at liberty to adopt the rule which seems to us to be the most fully supported by reason and authority. Acting upon that principle, we are disposed to concur in the rule supported by the authorities above cited, and to hold that the evidence of the prices paid by the railroad company to other property-owners for right of way along its line was incompetent and was improperly admitted.''

The Supreme Court of Illinois in the Gas Light Company case, above cited, summoned in support of the conclusions reached, a case decided by this court, that is, the City of Springfield v. Schmook, 68 Mo. 394, and while that case was distinguished from the cases of Railroad v. Clark, 121 Mo. 169, and Railroad v. Heiger,

139 Mo. 315, the principles therein announced as applicable to the admissibility of evidence, have never been departed from or overruled in any of the subsequent cases by this court. It is but fair to state that in the Schmook case the point involved was not precisely on all-fours with the question now under discussion. In that case the evidence was introduced to show the damages assessed and allowed to other persons, in order to establish the amount of the injury of the defendant in that cause, by comparison; however, it is applicable to the discussion of this question for the reason that it involves a similar principle upon the subject of the admissibility of testimony where it is sought to ascertain the value of land in a condemnation proceeding. Hough, J., in speaking for this court in that case, used this language: "Speculative, remote and consequential injuries and benefits are not to be allowed. Only those injuries are to be considered which are peculiar to the person whose property is taken, and are such as pertain to the ownership, use and enjoyment of the particular parcel of land, a portion of which is taken. [Cooley's Con. Lim. (3 Ed.), 566.] We do not think it was competent for the defendant to show what other persons had been allowed for their property, in order to establish the amount of his injury by comparison. The assessment of damages in the other cases may have proceeded upon incorrect principles, or the amount paid may have been the result of contract and in excess of the true value. Such a mode of inquiry was improper, because it furnished no accurate standard for estimating the defendant's damages, and was likely to lead to the introduction of many collateral issues. [Mayor of Lexington v. Long, 31 Mo. 369.]"

After a most careful consideration of the rule announced by Mr. Lewis in his treatise upon the law of Eminent Domain, that testimony as to what was paid by the party who seeks to condemn property to other parties for lands to be used in connection with the same

purpose for which the land sought to be appropriated was to be used, is inadmissible in the ascertainment of the value of the land involved in the proceeding to condemn, we have reached the conclusion that such rule of evidence as applicable to proceedings of this character is predicated upon sound legal as well as logical reasons and should be followed.

It certainly will not be seriously denied that there is a manifest distinction between purchases or sales made in the ordinary course of business and sales or purchases made by parties through the necessity of acquiring property for some public use. Take the facts of this case; the Metropolitan Street Railway Company desired to acquire for public use for the purposes of its said railroad, the right of way therefor and for its tracks, side tracks, power house site and terminals, certain lands in a particular locality in Kansas City, Missouri. In pursuance of the purpose to locate said tracks, side tracks and power house and terminals at said contemplated location in Kansas City, the necessity for carrying out such purpose necessarily required the railroad company to secure the land upon which these railroad improvements were to be constructed. They proceeded as contemplated by law to secure by purchase the lands upon which these improvements for public use were to be constructed. They purchased what is known in this proceeding as the Looney lot and paid for it $21,000.00. They were unable to agree with the respondents in this proceeding upon the price for the lot which is sought to be condemned, hence followed the institution of this suit which seeks to appropriate this property. This Looney lot was only separated from the lot of respondents which is sought to be appropriated in this cause by a sixteen-foot alley, and while there is no witness who expressly declares that this Looney lot was purchased for the purpose of applying it to the same use to which the lands of respondents were sought to be applied, yet

we take it that, when this entire record is considered, the conclusion is inevitable that the purchase of the Looney lot was purchased for the same purpose as the lot of respondents sought to be secured by this proceeding. In our opinion this testimony falls within the exception to the general rule as heretofore discussed and was inadmissible as a fair criterion of value of the property involved in this proceeding, and should have been excluded by the court.

It is insisted by respondents, however, that under the disclosures of the record it does not appear affirmatively that the Looney lot was purchased for the purpose of being used in connection with the property sought to be condemned for the construction of the railroad improvements designated in the petition for condemnation. It is earnestly argued and the question is ably presented by learned counsel for respondents, that it did not appear to the court at the time this evidence was offered, nor does it now appear, that the vendors knew that such property was being purchased for such use. We have examined very carefully the entire record in this proceeding and it is sufficient to say that we are unable to give our assent to this insistence. While, as before stated, there was no positive or direct testimony as to what purposes the purchases of the Looney and Miller property were made for, yet it is clearly indicated by the record that not only the court, but counsel on both sides of this case assumed and took it for granted that such property was sought for the purposes indicated in the petition. The Metropolitan Street Railway Company was organized for the purpose of operating a street railway in Kansas City, Missouri; it was by no means engaged in the real estate business, and only sought to acquire property when the necessities of the successful operation of their business required it. There was a fixed purpose on the part of the railway company to locate its power house, tracks and terminals as alleged in the petition in block 33.

Mr. Walsh, one of the respondents in this cause, indicates very clearly that he knew for what purpose they were undertaking to secure property in block 33. In his testimony he says that Mr. Madden who came to see him in respect to buying the property for the street railway company told him about it and further stated that Mr. Madden said that they thought they could do without the property on the north end of the block, and Mr. Walsh replied that "I told them I would be very glad if they would." This clearly indicates that Mr. Walsh fully understood and recognized that they were undertaking to secure property in that block for the purpose of locating the railway company's power house, tracks, terminals, etc. In addition to this, Mr. Corrigan testified that, in a conversation with Mr. Walsh about the purchase of his property, he told him that the company did not want to be pushed into court to make enemies for the company and said to Mr. Walsh that he was the only man practically that the company could not settle with or had not settled with. In other words, the substance of that conversation was that Mr. Corrigan told Mr. Walsh that he could settle with or had settled with the other land-owners in that block for the property desired for the purposes indicated in the petition. In fact, a careful analysis of this record convinces us beyond question that the court and counsel for respondents and Mr. Walsh, one of the respondents, assumed that it was a fact that the Looney and Miller property was purchased as a part of the property upon which the railway improvements were to be constructed, and further assumed that all that was necessary to render such sales competent evidence in this proceeding was to show that such property had been obtained without a law-suit or the damages assessed in a condemnation proceeding. This is indicated by the cross-examination of respondents' counsel, Mr. Corrigan. After the witness had stated that he purchased the Looney property and paid $21,000 for

it, the simple inquiry was made as to whether or not that purchase was made without a lawsuit and without any condemnation proceedings or anything of that kind.

The record discloses clearly that the appellant's counsel did not regard the fact that the Looney and Miller property had been purchased to be used for the same purpose as the property sought to be condemned, was in any way controverted, and we think rightfully assumed that such fact was taken for granted. The objection of appellant's counsel to the introduction of Mr. Looney's testimony makes it apparent that counsel were assuming that the purchase of the Looney and Miller property was made to avoid condemnation proceedings. Counsel stated to the court as a ground of objection to Mr. Looney's testimony, that any settlement that the plaintiff company made with him should not be taken as a criterion or standard of value in that neighborhood. This objection clearly indicated to the court that counsel in this case were proceeding upon the theory, so far as the purchase of the Looney and Miller property was concerned, that it was made by a private agreement, rather than to resort to a condemnation proceeding. The Looney property and the Miller property were located in the same block of the property of respondent which is sought to be appropriated by this proceeding. Mr. Walsh knew, for he so testified, that the railway company was seeking to acquire certain property in that block for the purpose of erecting certain improvements. The railway company had determined on locating the improvements upon land in that block, and only a short time before this condemnation proceeding purchased the Looney and Miller property, and in our opinion, under the disclosures of the record, there can be but one legitimate inference in respect to the purchase of the Looney and Miller property, and that was that it was being sought for the same purposes as the property in-

volved in this proceeding, and we are convinced that the court, as well as the counsel, acted upon such natural and legitimate inference and assumed that such property was purchased for the purposes as herein indicated. It is apparent from this record that the court did not admit this testimony on the ground that it was not made to affirmatively appear that it was purchased for the same purposes as the property sought to be condemned, but simply upon the theory that the amount paid for such property was not ascertained by reason of any condemnation proceeding, but by a private agreement, and for that reason the court doubtless thought that it did not fall within any exception to the general rule in respect to the proof of sales of other property. In this we are of the opinion that the learned trial judge was in error, and that the sales of the Looney and Miller property to the railway company were not a fair criterion by which to determine the value of the property involved in this proceeding.

It is, however, insisted by learned counsel for respondents that the appellant should not be permitted to avail itself of this error, for the reason that the railway company, when the time arrived for the introduction of its testimony, proceeded along the same lines and committed the same error complained of, and introduced testimony showing the prices paid by appellant for other property in that locality. This contention could be very well maintained if appellant had opened this cause and proceeded first to introduce such testimony; then clearly having invited the commission of such error, it could not justly complain of it. But that is not this case; the respondents, upon the exceptions filed to the report of the commissioners, opened the cause and proceeded with the introduction of their testimony, and offered for the first time the testimony of witnesses, Mrs. Miller and Looney, as to sales made by them to the railway company. To this testimony appellant interposed specific objections, assigning the

reasons for the same, and the court overruled the objections and admitted the testimony. Under these circumstances, the court having held that such testimony was competent, appellant was then clearly entitled to make the best of the situation confronting it that could be made, and endeavored to rebut the testimony to which it had timely made objections and saved its exceptions to the action of the court in admitting it. The appellant did not invite the commission of this error, nor can it be deprived, under the circumstances, of urging it in this court, simply for the reason that it undertook to meet and rebut the incompetent testimony offered first by the respondents, along the same lines as pursued in the first instance by them. This insistence must be ruled adversely to respondents, and it must be held that the action of the court in admitting the testimony heretofore pointed out constitutes reversible error.

II. We have carefully considered the complaint of appellant in respect to the admission of the testimony by Mr. Walsh and it is sufficient to say as to that assignment of error that while the witness was interested in the property, this interest appellant of course had the right to show, for the purpose of affecting the weight to be attached to his testimony, but it appears that he was familiar with the property and its location and had been for a number of years, and sufficiently acquainted with the market value of the property in that neighborhood as would warrant the court in permitting the witness to express an opinion in relation to such value. There was no error in permitting him to give an opinion as to the market value of the property involved in this controversy.

III. Our attention is directed by appellant to other numerous assignments of error in respect to the admission of evidence offered by respondents. As this cause must be retried for the errors heretofore point-

ed out, it will only be necessary to briefly notice the further complaints of appellant upon the subject of improper admission of testimony.

It was sought in the cross-examination of witness Madden to show an increase in value of property in the neighborhood of the property sought to be appropriated by reason of the acquisition of property in that vicinity by Armour and Swift. The court permitted this class of testimony upon the suggestion of respondents that it would be subsequently shown that the holdings of Armour and Swift in that neighborhood were prior to the time of this condemnation proceeding. It is only necessary to suggest upon a retrial that unless Armour and Swift's acquisition of property in that neighborhood was prior to the condemnation proceedings; the testimony should be excluded, hence it is unnecessary to express an opinion as to whether the admission of this testimony would or would not constitute reversible error.

There was also an inquiry made of witness Harrison as to his knowledge of what price the railway company had offered for this property prior to the institution of the condemnation proceedings, and the further inquiry as to whether or not the sum of seven or eight thousand dollars had been offered. It will suffice to suggest that while it may be proper to show that there was a failure to agree upon the amount to be allowed for the property desired for public use, it was not essential, nor was it competent to go into details of the negotiations for the purchase of the property and show different amounts offered to the respondents for it.

It was expressly ruled in the case of Railroad v. McGrew, 104 Mo. l. c. 298, that offers to agree, which were required to be made before legal proceedings could be instituted, having failed, all prior negotiations or offers were at an end and testimony of that character was inadmissible. This ruling in the McGrew case

was followed in the case of Railroad v. Eby, 152 Mo.
606. However, there was no error in respect to this
particular contention for the reason that this testimony
was withdrawn from the consideration of the jury by
an appropriate instruction.

There was no error in the admission of the testi-
mony of witness Hoffman in which the testimony sought
was to show the elements of value of the property in
controversy by reason of its being located near cer-
tain railroad tracks and was suitable for switching pur-
poses.

IV. It is insisted that the court erroneously ex-
cluded competent evidence offered by the appellant.
The complaint of error upon this proposition is mainly
directed to the exclusion of certain testimony of wit-
ness M. W. Barber. It was sought to prove by this
witness, as a criterion of value of the property in-
volved in this controversy, that he had offered to sell
to respondent Michael Walsh property near the loca-
tion of respondents' lots, for certain amounts. This
testimony was excluded by the court and we think
properly so. The rule in respect to the admission of
that character of evidence is nowhere more clearly or
correctly stated than it is by the learned text-writer
heretofore cited, Lewis on Eminent Domain. He thus
states the rule: "It is not competent for the owner to
prove what he has been offered for this property, or
what persons who have been looking for similar prop-
erty were willing to give for it. Nor is it competent
to prove offers for adjacent and similar property, or
the price at which the owners of such property have of-
fered it for sale. Offers made by the condemning party
to the owner, for the property in question, are in the
nature of an attempt to compromise, and cannot be
proved. As a general rule, therefore, offers for prop-
erty cannot be proven. But it may be shown, as
against the owner, what he has offered to take for the
property in question, unless it was by way of comprom-

ise. But it is not competent to show the price at which the owner has offered to sell to the party condemning after the proceedings were instituted. An attempted sale made the day after the taking and without knowledge thereof was held competent, the owner being allowed to explain why he was willing to take less than he claimed in the proceedings." This rule as announced in the text is fully supported by the authorities. [10 Am. and Eng. Ency. Law, 1157; Fowler v. Middlesex County, 6 Allen 92; Davis v. Railroad, 11 Cush. 506; Railroad v. Benson, 36 N. J. L. 557.]

V. It is also insisted that it was error to exclude the questions propounded by counsel for appellant to Mr. Walsh upon cross-examination as to certain other property being offered to him for specific amounts, and that he declined to take the property. While great latitude is always allowed in the cross-examination of a witness, and it would certainly have been competent to have permitted the full cross-examination of this witness as to his knowledge of the value of property in that vicinity, yet we are of the opinion that to permit a cross-examination as to offers made to him to sell specific property for a designated amount and that he declined to accept, savors too much of making such offers original evidence with the view of having the jury consider it as a criterion of value in estimating the value of the property in controversy, and if permitted would necessitate an instruction limiting the purposes of such a cross-examination. There was no error in the denial of such cross-examination.

VI. Appellant challenges the correctness of instructions 3, 4 and 5 given by the court at the request of respondents. All of the instructions are reproduced in the statement of this cause and there is no necessity for a repetition in this opinion of those instructions to which the complaints of appellant are directed. It will suffice to say of instruction number 3, which under-

takes to guide the jury by defining the term "fair market value," that it substantially states the law correctly. However, we see no necessity for undertaking to improve upon instructions to the jury in cases of this character which have uniformly met the approval of this court. The complaint at this instruction is mainly directed to the following language used in it: "But what it would fairly bring in the hands of a prudent seller at liberty to fix the time and conditions of sale."

This part of the definition of the term market value is fully supported in 10 Am. and Eng. Ency. Law, 1152, and the cases cited in support of the text, and while it will not be denied that the law as declared in the text of this most valuable work is correctly stated, yet we simply repeat the suggestion that there is no necessity for abandoning "well beaten paths" in our efforts to guide the jury upon any legal proposition. It would disarm all criticism to have defined the term "market value" by the use of the language as indicated in Railroad v. Porter, 112 Mo. 369, to which respondents have specially called our attention. There it was substantially said by the court that the market value of land did not mean the price it would bring at public auction and forced sale for cash, but such price as could be obtained for it on the usual or ordinary terms of private sales. The instruction approved by this court in the Stock Yards Case, 120 Mo. 541, in plain and unambiguous terms defined the meaning which should be applied to "market value," which meaning could have been readily comprehended by the jury, and this instruction could have very appropriately been applied to this case. The jury when told that the market value was such price as could be obtained for it on the usual or ordinary terms of private sale, would have no trouble in understanding what was meant by the court, for it would only be necessary to apply their common

197 Sup.—27

and every day observations of the purchases and sales of real estate between their neighbors and other persons transacting such business. It is equally clear that they would have readily understood the meaning applicable to "fair market value" had they been guided by the language used in the instruction in the Stock Yards case, where the jury were told that "the market value of the property means its actual value, independent of the location of plaintiff's road thereon, that is, the fair value of the property as between one who wants to purchase and one who wants to sell it; not what could be obtained for it in peculiar circumstances when greater than its fair price could be obtained; nor its speculative value; nor the value obtained through the necessities of another. Nor, on the other hand, is it to be limited to that price which the property would bring when forced off at auction under the hammer. The question is, if the defendant wanted to sell its property, what could obtained for it upon the market from parties who wanted to buy and would give its full value?"

While we do not say it was error for the court to declare to the jury that the market value of land is what it would bring in the hands of "a prudent seller at liberty to fix the time and conditions of sale," yet we simply suggest that the safer and better rule, where terms are to be defined in proceedings of this character in this State, is to adopt such definition, where it can be practically applied, as has uniformly met the approval of the appellate courts of this State.

There was no error in instructions numbered 4 and 5, which are challenged by appellant. The general rule in estimating the compensation to be allowed the owner whose land has been appropriated to a public use, is, "that reference should be had to the use for which the property is suitable, having regard to the existing business or wants of the community or such as may be reasonably expected in the immediate future." This is

the rule substantially announced in Railroad v. Mc-Grew, 104 Mo. 282, and followed in the cases of Railroad v. Porter, 112 Mo. l. c. 368, and Webster v. Railroad, 116 Mo. l. c. 119, in which are cited in support of the conclusions reached upon that proposition, Young v. Harrison, 17 Ga. 30; Boom Co. v. Patterson, 98 U. S. 407. Instructions 4 and 5 are in perfect accord with those cases and if there is testimony upon which to predicate them, there is no error in giving them.

VII. It is insisted by the appellant that the court erred in its refusal of instructions numbered 1 and 2 requested by appellant. Treating of instruction number 2, refused by the court, and as to whether or not it is covered by other instructions given in the cause, it is only necessary to say that while instruction number 3 given on the part of the respondents, and number 3 given on the part of the appellant, cover some of the important features on the subject of market value, which should be submitted in instructions as a guide to the jury, yet they do not embrace all the essential elements of that subject which the jury have a right to consider in reaching their final conclusion in the cause.

The law as declared in instruction number 2 was approved in Railroad v. Union Stock Yards, supra, and in the case of Railroad v. Knapp-Stout & Co., 160 Mo. 396. This court, speaking through Gantt, J., in responding to a challenge to the correctness of an instruction in that case which embraced the same features as instruction number 2 requested in the case at bar, in no doubtful or uncertain terms expressly declared that the instruction clearly presented the law and was properly given by the court in that case. After quoting the instruction it was said: "Certainly this is the law, and this instruction met the approval of this court in the Stock Yards case, 120 Mo. 541. It is not argumentative. It is a plain direction to the jury that they must exclude in their estimate of the fair market value of the land, certain considerations which the law excludes, and

which a jury of laymen might otherwise deem to be proper elements of damages. Nor was error committed in instructing the jury that they could not consider speculative values. Moreover, the definition of 'market value' is in all its substantial features like that given by the defendant in its own instruction on that subject. A condemning company is not chargeable with speculative values.'' Instruction number 2 in the case at bar, refused by the trial court, is in the nature of a detailed explanation of what is meant by the term ''market value,'' cautionary in its character, particularly pointing out to the jury in detail how the market value of property is to be determined. We repeat, that this instruction having met the approval of this court, and certain features of it not being fully embraced in other instructions given in the cause, this instruction should have been given by the court.

As to instruction number 1 it is sufficient to say that if upon the retrial of this cause the suggestions as heretofore made are followed, and the term ''market value'' is defined along lines of the instructions approved in the cases herein indicated, the subject of market value will have been fully covered, and instruction number 1 as requested by appellant can serve no useful purpose in guiding the jury and should be denied.

VIII. This brings us to the consideration of the final contention of the appellant, that is, that the damages assessed by the jury under the facts developed at the trial, were excessive. We will not say, nor is it necessary to say, that the verdict is excessive in this cause, for it is with great reluctance that the appellate courts undertake to interfere with the finding of a jury in cases of this character where the great power of eminent domain is invoked, and a citizen, without his consent, is compelled to surrender his property. But on the other hand, under the laws of this State, he is only entitled to receive the fair market value of his property

when it is taken for public use, and when he is dissatisfied with the assessment made by the commissioners appointed for that purpose and seeks a trial by a jury, to which he is clearly entitled under the Constitution and laws of this State, the verdict of the jury can only be supported and maintained when their conclusions have been reached by the consideration of such testimony as is recognized by the law, a fair criterion, in fixing the value of the property so taken. The record in this cause suggests a wide difference in the conclusions of the commissioners and that of the jury, and while the assessment as made by the commissioners should be no guide to a jury in making their assessment of damages, nor to this court, in passing upon the question of whether or not the verdict of the jury was excessive, yet in view of the errors herein pointed out, and while we express no opinion upon the amount of damages assessed in this cause, we have reached the conclusion that the ends of the fair administration of justice would be best subserved by a retrial of this cause.

Entertaining the views as herein expressed, it results that the judgment in this cause should be reversed and the cause remanded for a new trial in accordance with the views expressed in this opinion, and it is so ordered. All concur.